Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

| | |
|---|---|
| SOUTHERN FOUR WHEEL DRIVE CLUB, )<br>UNITED FOUR WHEEL DRIVE )<br>ASSOCIATIONS, THE BLUERIBBON )<br>COALITION, )<br>)<br>            Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES FOREST SERVICE, )<br>NANTAHALA NATIONAL FOREST, )<br>MARISUE HILLIARD, Forest Supervisor, )<br>)<br>            Defendants. )<br>_____) | CIVIL ACTION NO.: 08: cv-11 |

## COMPLAINT

### NATURE OF ACTION

1. This action seeks declaratory and injunctive relief requiring Defendants United States Forest Service, Nantahala National Forest, and Marisue Hilliard (the "Forest Service") to acknowledge and adhere to controlling law while managing recreational access to the Upper Tellico Off-Highway Vehicle ("OHV") Area of the Forest.

2. Plaintiffs specifically challenge the Forest's decision to prohibit and restrict vehicular access along previously-open roads and trails through the Forest Supervisor's Orders and Decision Memo dated December 20, 2007 (the "Decision").

3. This action arises under the the National Forest Management Act, 16 U.S.C. § 1600 et seq. ("NFMA"); the National Environmental Policy Act, 42 U.S.C. § 4331, et seq.

COMPLAINT -- 1

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

("NEPA"); the Administrative Procedure Act, 5 U.S.C. § 551, et seq. (the "APA"), and implementing regulations for these statutes.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States. The conduct complained of creates an actual, justiciable controversy and is made reviewable under the APA.

5. Venue is proper in this Court under 28 U.S.C. § 1391(e) because a substantial number of the events or omissions giving rise to these claims occurred, or, a substantial part of the property that is the subject of these claims is situated, within the Western District of North Carolina. The Decision was issued from the Forest's office in Asheville, North Carolina.

## PARTIES

6. Plaintiff Southern Four Wheel Drive Association ("Southern") is a nonprofit organization formed in 1987 and dedicated to promoting four-wheel drive recreation, responsible land usage, conservation and education. Southern is an association of member clubs located in the southeastern U.S. including Alabama, Georgia, Kentucky, North Carolina, South Carolina and Tennessee. Southern members have long visited the Forest and the Area, have assisted to the extent allowed by the Forest Service in active management of vehicle travel, and have definite and concrete plans to access the Forest and the Area via motorized vehicles in the future, to the extent authorized by the Forest Service.

7. Plaintiff United Four Wheel Drive Associations ("UFWDA") consists of more than 10,000 individuals, clubs, and associations who share a common interest in recreational off-road activities, including the use of four-wheel-drive vehicles. UFWDA has members in each of the 50 states and in several foreign countries. Our members access federal public lands

COMPLAINT -- 2

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

throughout the United States, including lands within the Nantahala National Forest and the Upper Tellico OHV Area, to the extent authorized by the Forest Service. UFWDA members have definite and concrete plans to access the Forest and the Area via motorized vehicles in the future, to the extent authorized by the Forest Service.

8. Plaintiff The Blue Ribbon Coalition, Inc. ("BlueRibbon") is an Idaho nonprofit corporation representing over 1,100 businesses and organizations with approximately 600,000 members nationwide. BlueRibbon members use motorized and non-motorized means, including off-highway vehicles, horses, mountain bikes, and hiking, to access Forest Service and other public lands throughout the United States, including such lands in North Carolina. BlueRibbon has a long-standing interest in the protection of the values and natural resources addressed herein, and regularly works with land managers to provide recreation opportunities, preserve resources, and promote cooperation between public land visitors. BlueRibbon members have visited the Forest via the above-described means of access and intend to do so in the future. BlueRibbon members submitted input to the Forest and otherwise participated to the extent public participation was allowed into the process that generated the Decision.

9. Defendant United States Forest Service is a federal agency within the United States Department of Agriculture. The Forest Service is charged with administering and overseeing United States Forest System lands in accordance with applicable law.

10. Defendant Nantahala National Forest is a subunit of the United States Forest Service comprised of over 531,000 acres of land located in North Carolina. The Forest's main office is located in Asheville, North Carolina.

11. Defendant Marisue Hilliard is the Forest Supervisor for the Nantahala. As her title implies, she is the supervisor for the Forest and is the ultimate authority for the actions,

COMPLAINT -- 3

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

procedures and decisions of the Forest and is charged with ensuring the Forest complies with applicable law. She signed the Decision at issue herein. She is sued solely in her official capacity.

## GENERAL ALLEGATIONS

12. The Nantahala encompasses over 531,000 acres of land in North Carolina. These lands range from dry yellow pines to a variety of moist cover and upland oak forests, to high-elevation northern hardwood and spruce forests. About 1,900 types of plants and 300 to 400 species of vertebrate animals are found in the Forest. Fiscal Year 2006 data reveal that "driving for pleasure" constitutes over 17 percent of recreation site visits to National Forests in North Carolina. While these Forests have approximately 2,560 miles of road within Forest Service jurisdiction, approximately 1,556 miles of those roads are normally closed to public vehicle use.

13. The Forest includes the Upper Tellico OHV Area located within the Tusquitee Ranger District of the Forest (the "Area"). The Area, like much of the Forest, contains a variety of vegetation types punctuated by streams and relatively deep gorges. Much of this terrain was heavily logged during or before the 1960's and later purchased by the Forest Service. The Area consists of approximately 8,000 acres and now includes twelve (12) formally designated trails that encompass a total of about 38 miles. These trails involve a variety of terrain and challenges ranging from relatively easy routes to extremely challenging routes requiring advanced equipment and operator skill/experience. As a result of these unique opportunities, the Area is a destination for "jeep" and "four wheel drive" OHV enthusiasts from throughout the country and is an unparalleled site in the eastern United States for the four-wheel drive community.

14. The term "off-highway vehicle" is formally defined as "[a]ny motor vehicle designed for or capable of cross-country travel on or immediately over land, water, sand, snow,

COMPLAINT -- 4

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

ice, marsh, swampland, or other natural terrain." 36 C.F.R. § 212.1 (2006). A wide spectrum of vehicles are generally understood to meet this definition including motorcycles, all-terrain vehicles, snowmobiles, jeeps and factory stock sports utility vehicles.

15. OHVs are a traditional and increasingly-popular means of visiting National Forest System lands. This access occurs as a means to other activities, such as sightseeing, picnicking, camping, photography, hunting, fishing, wildlife study and similar outdoor pursuits. In addition, some enthusiasts derive enjoyment and satisfaction from the act of traveling through the Forest in their vehicle and the associated navigational, operational and mechanical challenges potentially associated with such travel.

16. In addition to its supporters and enthusiasts, OHV travel has its detractors. Opponents to OHV access on the Forest have more closely targeted riding in the Upper Tellico OHV Area in recent years, applying their energies and resources to a campaign including political, administrative, legal and public relations strategies ultimately designed to eliminate meaningful OHV access to the Area.

17. Mindful of the potential issues and controversy surrounding OHV use in general and on the Forest, Plaintiffs and their members have long attempted to educate their members, forge effective and collaborative relationships with land managers and other interest groups, and proactively address resource concerns potentially associated with vehicle use. Plaintiff organizations and their members conduct trail maintenance work in the area several times each year in conjunction with Forest Service oversight. Typical trail maintenance activities have included movement of rock for trail stabilization, adding signage, planting seed and fertilizing new plantings. During the months of May, June, and July, 2007 trail work included hauling over 250 tons of surge stone for trail stabilization; repairing, cleaning, and installing over 150 water

COMPLAINT -- 5

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

bars and silt traps; repair of Fain's Ford Crossing; repairing and replacing 2 culverts; closing 6 illegal trails/bypasses; donating 698.5 volunteer hours and donating 1,003.5 hours of heavy machine time. At the "Tellico Cleanup Day" on March 10, 2007, Defendant's reported volunteer pickup and removal of 213 bags of trash and 2,400 pounds of trash removed in North Carolina by 212 participants. Plaintiffs' members constituted 116 of the 212 participants, while Trout Unlimited members constituted 23 of the 212 participants.

18. Following these efforts the Southern Environmental Law Center sent a letter to the Forest in June, 2007 on behalf of several organizations styled as a "notice of intent to sue" under the Clean Water Act for alleged violations of that and related statutes arising from continuing OHV use of the Area (the "NOI").

19. The NOI specifically requested "at a minimum, remedial measures for the Tellico ORV trail system must include year-round closure of the trails known to be degrading water quality and seasonal closure of the entire system during the wettest months of the year". NOI at 5. The NOI further requested immediate action to address alleged Clean Water Act violations including un-permitted discharge of pollutants (NOI at 5), un-permitted discharge of dredged and fill material (NOI at 6); violations of state water quality laws and standards in both North Carolina (NOI at 7) and Tennessee (NOI at 10); violations of National Environmental Policy Act, the National Forest Management Act and Forest Service regulations (NOI at 11).

20. In apparent response to the NOI, the Forest held at least several meetings. At least one meeting was open to the public and included representatives from numerous interest-group perspectives. Other meetings were not open to the public and involved only the Forest and handpicked representatives of the preservationist special interests opposed to ongoing vehicle access in the Area.

COMPLAINT -- 6

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

21. The Forest outlined a list of options designed to address the concerns raised in the NOI and subsequent meetings. These options included varied procedures and outcomes, ranging from further survey/assessment to "permanent closure and rehabilitation" of identified Trails.

22. Plaintiffs UFWDA and BlueRibbon sent a letter, through their counsel, dated August 22, 2007 to the Forest advising of concerns over "the possibility of detailed settlement discussions" between the Forest and the groups who filed the NOI and requesting involvement in discussions of any such nature between the agency and special interests.

23. The Forest sent out a "scoping notice" dated September 17, 2007 soliciting public comment on two proposed "Forest Supervisor's Orders" in the Area. One proposed order would prohibit motorized vehicles on Lower Trail 2, Trail 7, and Trail 9, duration of order not to exceed one year or until a reasonable plan is in place to prevent adverse impacts to the aquatic resource. The other proposed order would prohibit wintertime motorized vehicle use on the Upper Tellico OHV Trail System from January 1 to March 31 each year. This would include all trails in the system except Trail 1 and the upper section of Trail 2, which would remain open as system roads, used by vehicles types normally found on public roads.

24. During this same time in September, 2007 the Forest initiated an "engineering survey and assessment" to evaluate a variety of issues articulated or implicated by the NOI.

25. The Forest received a variety of responses to the scoping notice, including one dated September 25, 2007 signed by counsel for Plaintiffs UFWDA and BlueRibbon.

26. On November 19, 2007 Forest representatives held a meeting with Plaintiff organizations' representatives which the Forest indicated was to be an "informational" meeting in which to report on the progress of the "survey and assessment" and to discuss various short-

COMPLAINT -- 7

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

and long-term strategies to manage OHV travel in the Area and to appropriately avoid or mitigate any adverse effects associated with such travel.

27. Approximately one month after this meeting the Forest issued the Decision on December 20, 2007 that purports to "put into effect two Forest Supervisor's Orders" restricting OHV use in the Area. The first action consists of "a one-year closure" of Lower Trail 2, Trail 7, a portion of Trail 8 and Trail 9 that prohibits operation of motor vehicles during the closure period. The second action is an Area-wide "seasonal closure" which prohibits operation of motor vehicles between January 1 and March 31 each year.

28. The practical effect of the Decision is to eliminate meaningful vehicle access to the Area. Navigating and riding along the trail segments closed by the Decision are the primary motivation for the majority of OHV enthusiasts visiting the Area. The trails not closed by the Decision essentially provide a means of access to the "destination" segments closed by the Decision. Absent the ability to ride the closed trail segments; many if not the vast majority of OHV enthusiasts would have greatly diminished interest in riding in the Area.

29. The Decision indicates that its actions "are categorically excluded from documentation in an environmental impact statement or an environmental assessment." The Decision further states that its actions "are not subject to legal notice and opportunity to comment" and that the Decision "is not subject to [administrative] appeal."

30. As a result of the foregoing, Plaintiffs have no alternative but to file the present action in order to challenge the actions contained within the Decision.

### COUNT ONE: VIOLATION OF NFMA-TRAVEL MANAGEMENT RULE
### (Illegal Application of Substantive Criteria)

31. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

32. NFMA requires the Forest to prepare and revise a "forest plan." 16 U.S.C. § 1604. These plans contain desired conditions, objectives and guidance for project and activity decision making, but do not approve or execute projects and activities. 36 C.F.R. § 219.3 (2007). The guidance in the Forest Plan is subject to change through plan amendment in site-specific or project-level planning, or through revision of the Forest Plan itself. 36 C.F.R. § 219.12 (2007). Additional guidance and criteria are presented in activity-specific rules, such as the Travel Management Rule, provides for motorized access to the Forest System.

33. The Travel Management Rule was promulgated through notice-and-comment rulemaking and thereby carries force and effect of law. The Travel Management Rule generally "requires designation of those roads, trails and areas that are open to motor vehicle use…and will prohibit the use of motor vehicles off the designated system, as well as use of motor vehicles on routes and in areas that is not consistent with the designations." 70 Fed.Reg. 68264 (Nov. 9, 2005).

34. The Travel Management Rule requires the agency to apply "general criteria" when designating roads, trails and areas for vehicle use, which include effects on natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails and areas, and the availability of resources for maintenance and administration. 36 C.F.R. § 212.55(a). The Travel Management Rule further includes "specific criteria" which must be considered, "with the objective of minimizing" effects on specified resources including soils, watersheds, wildlife and associated habitats and conflicts between vehicle and other uses and within vehicle use types. *Id.* at (b).

COMPLAINT -- 9

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

35. The Decision fails to acknowledge, let alone rationally apply, the Travel Management Rule criteria.

36. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

37. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

38. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go un-redressed absent judicial relief.

### COUNT TWO: VIOLATION OF NFMA-TRAVEL MANAGEMENT RULE
**(Failure to Follow Prescribed Procedures)**

39. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

40. In addition to the aforementioned criteria for designation, the Travel Management Rule prescribes designation procedures. Specifically, the Rule requires public involvement and further requires "[a]dvance notice…to allow for public comment, consistent with agency procedures under the National Environmental Policy Act, on proposed designations and revisions." 36 C.F.R. § 212.52(a) (2006).

41. In adopting the Decision, Defendants allowed for minimal public involvement, which included notice of the proposed closures and an opportunity to submit comment.

COMPLAINT -- 10

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

However, Defendants did not provide for the more detailed analysis and opportunity for subsequent public participation afforded by analysis through an environmental assessment or environmental impact statement under NEPA.

42. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

43. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

44. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go un-redressed absent judicial relief.

### COUNT THREE: VIOLATION OF NEPA
### (Illegal Selection of Categorical Exclusion – Failure to Conduct EA/EIS)

45. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

46. NEPA requires that for all major Federal actions "significantly affecting the quality of the human environment", an environmental impact statement must be prepared. 42 U.S.C. § 4332(2)(C). Council on Environmental Quality ("CEQ") regulations regarding NEPA implementation provide that as a preliminary step, the agency may prepare an environmental assessment ("EA") to determine whether the proposed action requires an EIS. 40 C.F.R. §

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

1508.9. If the EA discloses that there is no potential for significant impact, the agency must issue a finding of no significant impact ("FONSI"). 40 C.F.R. § 1508.13.

47. CEQ regulations provide that an agency may exclude from full environmental analysis certain classes of activities "which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of" the CEQ regulations. 40 C.F.R. § 1508.4. USDA established categorical exclusions for certain classes of activities which meet the standard set forth in 40 C.F.R. § 1508.4.

48. In adopting the Decision, Defendants did not prepare an environmental impact statement or an environmental assessment, but instead asserted the action(s) at issue were categorically excluded from such detailed analysis and could be analyzed through a decision memo.

49. The failure to more thoroughly analyze vehicle restrictions through an EA or EIS can actually increase the potential for adverse effects to the human environment, as a result of numerous and complex factors, including the possible effects of closure-caused displaced use within or beyond the project area.

50. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

51. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

COMPLAINT -- 12

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

52. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go un-redressed absent judicial relief.

## REQUEST FOR RELIEF

Wherefore, having alleged violations of the Travel Management Rule, NFMA and its implementing regulations, and NEPA and its implementing regulations, Plaintiffs respectfully request judgment in their favor on each and every claim alleged herein, and request that the Court rule, adjudge, and grant relief as follows:

1. Declare unlawful and set aside the Decision;

2. Remand the matters addressed in the Decision for further analysis and action in accordance with applicable law;

3. Award the Plaintiffs their reasonable fees, costs, and expenses of litigation as allowed by the Equal Access to Justice Act, 28 U.S.C. § 241 *et seq.* and other applicable law or rule of court; and

4. Grant such further and additional relief as the Court deems just and proper.

Respectfully submitted this 22nd day of May, 2008.

                                               MCKINNEY & TALLANT, P.A.

                                               s/ Zeyland G. McKinney, Jr.
                                               Zeyland G. McKinney, Jr.
                                               N.C. State Bar # 11004
                                               40 Court Street
                                               Robbinsville, NC
                                               Tel: 828-479-2442
                                               Fax: 828-479-6747
                                               zeyland@mckinneyandtallant.com

COMPLAINT -- 13

Please purchase PDFcamp Printer on http://www.verypdf.com/ to remove this watermark.

COMPLAINT -- 14